1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KELLY PATTERSON,

                                  Plaintiff(s),

     v.

OFFICER RICHARD FONBUENA,

                                  Defendant(s).

Case No. 2:18-CV-518 JCM (GWF)

ORDER

       Presently before the court is defendant Officer Richard Fonbuena's ("Officer Fonbuena") motion for summary judgment.  (ECF No. 32).  Plaintiff Kelly Patterson ("Patterson") filed a response (ECF No. 36), to which Officer Fonbuena replied (ECF No. 40).

**I.**     **Facts**

       This action arises from Officer Fonbuena arresting Patterson allegedly for videotaping police activity.  (ECF No. 15).

       On November 5, 2016, Las Vegas Metropolitan Police Department ("LVMPD") officers responded to a call on Fremont Street whereby several females were involved in a physical altercation.  (ECF No. 32 at 10).  Upon breaking up the brawl, the officers attempted to arrest an African American female they believed to be the instigator.  *Id.*; (ECF No. 34 at Exs. D, H).  However, the female quickly became loud and combative, and three officers began to place her in handcuffs.  *Id.* at D.

       While the officers were effectuating the arrest, Patterson was walking on the sidewalk across the street and heard the female shout, "Don't touch me" and "Get your hands off me." (ECF Nos. 15 at 3, 32 at 11).  Patterson remained fifteen feet away from the officers and began video-recording the incident with his phone.  *Id.*  Patterson claims that he was documenting the

James C. Mahan
U.S. District Judge

1    arrest in his capacity as a reporter for CopBlock.org, which is a website intended to "inform the

2    public of police misconduct."  (ECF Nos. 15 at 2–3, 32 at 11, 15).

3           Officer Fonbuena noticed Patterson recording and hastily approached him, telling him to

4    "move on." (ECF Nos. 32 at 12, 34 at Ex. H).  Patterson responded that he was "not moving on."

5    *Id*.  Officer Fonbuena then asked Patterson if he wanted to go to jail for obstructing a police

6    officer.  *Id*.  Patterson replied that he was "not obstructing anything."  *Id*.  After continuing to tell

7    Patterson to "move on" and Patterson refusing to do so, Officer Fonbuena again asked Patterson

8    if he wanted to go to jail, if he was an "idiot," and whether he lived in Las Vegas.  (ECF Nos. 32

9    at 13–14, 34 at Exs. H).

10          Officer Fonbuena eventually grabbed Patterson's arm and forced him into the street.

11   (ECF No. 34 at Exs. H, K).  When Patterson pulled back from Officer Fonbuena's grip, Officer

12   Fonbuena put his arm around Patterson's neck and shoulder, tossing him to the ground.  *Id*. at

13   Ex. K.  Officer Fonbuena immediately got on top of Patterson while three other officers rushed

14   over to put Patterson in handcuffs.  *Id*.   The officers successfully placed Patterson in custody

15   and put him in the back of a patrol car.  *Id*. at Exs. H, K, M.  Officer Fonbuena cited Patterson

16   for pedestrian interference and obstructing a police officer.  (ECF No. 32 at 15–16).

17          On February 28, 2018, Patterson filed suit against Officer Fonbuena and Las Vegas

18   Metropolitan Police Department ("LVMPD") in state court.  (ECF No. 3 at 1).  LVMPD and

19   Officer Fonbuena removed the case to federal court on March 21, 2018.  *Id*. at 4.  On May 1,

20   2018, the court dismissed LVMPD as a defendant and granted Patterson leave to amend his

21   complaint.  (ECF No. 14).  In his amended complaint, Patterson alleges that Officer Fonbuena's

22   conduct violated his First, Fourth, Fifth Amendment rights.  (ECF No. 15).   Specifically,

23   Patterson asserts four claims: (1) First Amendment retaliation; (2) arrest without probable cause

24   in violation of the Fourth Amendment; (3) use of excessive force in violation of the Fourth

25   Amendment; and (4) violation of procedural due process under the Fourteenth Amendment.  *Id*.

26   Now, Officer Fonbuena moves for summary judgment on all causes of action.  (ECF No. 32).

27   . . .

28   . . .

James C. Mahan
U.S. District Judge

- 2 -

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  *Id*.

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, the court must deny summary judgment and it need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith*

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    *Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the

2    opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient

3    that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

4    differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,

5    809 F.2d 626, 631 (9th Cir. 1987).

6         In other words, the nonmoving party cannot avoid summary judgment by relying solely

7    on conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d

8    1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

9    allegations of the pleadings and set forth specific facts by producing competent evidence that

10   shows a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.

11        At summary judgment, a court's function is not to weigh the evidence and determine the

12   truth, but to determine whether there is a genuine issue for trial.  *See Anderson v. Liberty Lobby,*

13   *Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

14   justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

15   nonmoving party is merely colorable or is not significantly probative, summary judgment may be

16   granted.  *See id.* at 249–50.

17   **III.   Discussion**

18        Officer Fonbuena argues that he is "entitled to qualified immunity [on the First and

19   Fourth Amendment claims] because his decision to impose a distance restriction was not

20   'beyond debate' wrong."  (ECF No. 32 at 22).  However, Patterson contends that a genuine issue

21   of material fact exists as to whether Officer Fonbuena violated Patterson's constitutional rights

22   and thus qualified immunity is unavailable to him.  (ECF No. 36 at 6).  Moreover, Officer

23   Fonbuena argues that Patterson's Fifth Amendment claim is not legally cognizable and thus the

24   court must dismiss it.  (ECF No. 32 at 32).  The court addresses each of Officer Fonbuena's

25   contentions individually.

26        In determining whether officers are entitled to qualified immunity the court takes the

27   facts in the light most favorable to the nonmoving party and considers whether "(1) the facts

28   show that the officer's conduct violated a constitutional right; and (2) if so, whether that right

**James C. Mahan**
**U.S. District Judge**

1  was clearly established at the time." *Rider v. Tristan*, No. 2:16-cv-02633-RFB-PAL, 2019 WL

2  652997 at *3 (D. Nev. Feb. 15, 2019); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001);

3  *Tarabochia*, 766 F.3d 1115, 1121 (9th Cir. 2014).

4      *a.   First Amendment*

5      Officer Fonbuena argues that the court should find that he is entitled to qualified

6  immunity on Patterson's First Amendment claim.  (ECF No. 32 at 22).  The court now analyzes

7  both prongs of qualified immunity in turn.

8          *i.   Constitutional violation*

9      "In order to state a claim for a First Amendment violation, a plaintiff must allege (1) that

10  he was engaged in a constitutionally protected activity; (2) that the [officer's] actions would chill

11  a person of ordinary firmness from continuing to engage in that activity[;] and (3) that the

12  protected activity was a substantial or motivating factor in the [officer's] conduct." *Adkins v.*

13  *Limtiaco*, 537 Fed. App'x 721, 722 (9th Cir. 2013) (citing *Mendocino Envtl. Ctr. v. Mendocino*

14  *Cnty.*, 192 F.3d 1283, 1300–01 (9th Cir. 1999)).

15      As a threshold matter, the parties do not dispute that Patterson's conduct—filming a

16  police officer on public property—meets the first requirement of the analysis.  *See generally*

17  (ECF Nos. 32, 36, 40).  The Ninth Circuit has firmly established the right to film matters of

18  public concern, including police activity.  *See Fordyce v. City of Seattle*, 55 F.3d 436, 438–39,

19  442 (9th Cir. 1995) (recognizing the First Amendment right to film matters of public interest);

20  *see also Limtiaco*, 537 Fed. App'x at 722 (finding that plaintiff's constitutional right to

21  photograph a public scene was clearly established at the time of the 2009 arrest) (citation

22  omitted).

23      Furthermore, Officer Fonbuena testified that he ordered Patterson to "move on," and after

24  counting down from "four, three, two, one," Officer Fonbuena arrested Patterson for disobeying

25  orders.  (ECF No. 36 at 9).  The Ninth Circuit has held that "retaliatory police action such as an

26  arrest or search and seizure would chill a person of ordinary firmness from engaging in future

27  First Amendment activity." *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013).  Thus,

28

James C. Mahan
U.S. District Judge

- 5 -

1    when Officer Fonbuena arrested Patterson, he engaged in acts that deter the exercise of First

2    Amendment rights.

3           Additionally, the court finds factual disputes regarding whether Patterson's filming was a

4    substantial or motivating factor in Officer Fonbuena's decision to arrest Patterson. *See* (ECF

5    Nos. 32, 36, 40). Officer Fonbuena argues that he arrested Patterson for pedestrian interference

6    and obstructing a police officer. (ECF No. 40 at 9). However, Patterson avers that his filming of

7    the police activity was a substantial and motivating factor in his arrest. (ECF No. 36 at 8).

8    Patterson seeks to corroborate this argument with Officer Fonbuena's testimony wherein Officer

9    Fonbuena admitted that (1) he was only paying attention to Patterson because Patterson was

10    recording; (2) he arrested Patterson because Patterson resisted the order to "move on" and was

11    still recording; and (3) he would not have arrested Patterson if Patterson ceased recording. *Id*. at

12    8–9.

13           The court concludes that Officer Fonbuena's testimony, as well as the video recording

14    and police officers' body camera footage, constitute sufficient evidence on which a reasonable

15    jury could find that Officer Fonbuena acted with a retaliatory motive. *See* (ECF Nos. 32, 34 at

16    Exs. H, K, 36, 40). Thus, Officer Fonbuena has not shown that he did not violate a constitutional

17    right.

18           *ii.   Clearly established right*

19           Having determined that questions of material fact remain, the court must now decide

20    whether it should nevertheless grant summary judgment because there is no clearly established

21    right. *See Saucier*, 533 U.S. at 201.

22           The relevant inquiry is whether a reasonable officer in Officer Fonbuena's position would

23    believe that arresting Patterson for filming the police was lawful in light of clearly established

24    law. *See Saucier*, 533 U.S. at 201; *Tarabochia*, 766 F.3d at 1125 (internal quotations omitted);

25    *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (explaining that "defendants

26    are only entitled to qualified immunity as a matter of law if, taking the facts in the light most

27    favorable to [the plaintiff], they violated no clearly established constitutional right").

28

**James C. Mahan**
**U.S. District Judge**

Under the second prong, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." *Tarabochia*, 766 F.3d at 1125 (internal quotations omitted). Moreover, while a case directly on point is not a requirement for the law to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotations omitted); *see also Plumhoff v. Rickard*, 572 U.S. 765, 778–89, 134 S.Ct. 2012 (2014); *Injeyan v. City of Laguna Beach*, 645 F. App'x 577, 579 (9th Cir. 2016). This ensures that the law has given officials "fair warning that their conduct is unconstitutional." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) (citation omitted).

Filming, photographing, or recording matters of public interest, including police conduct, are clearly established constitutional rights. *See Fordyce*, 55 F.3d at 438–39, 442 (recognizing the First Amendment right to film matters of public interest); *see also Limtiaco*, 537 Fed. App'x at 722. The Ninth Circuit also established that there is a right to be free from retaliation even if a non-retaliatory justification exists for the officer's actions. *See e.g., Skoog v. Cty. Of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006); *see also O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016). Thus, "a reasonable officer would have known that he cannot retaliate against a citizen for recording the police in a public place, even if the officer was also acting to protect the safety of officers or to arrest [the individual] based on probable cause." *Redmond v. San Jose Police Dept.*, No. 14-cv-02345-BLF, 2017 WL 5495977 at *11 (N.D. Cal. Nov. 16, 2017).

*iii.  Conclusion*

Where, as here, a reasonable jury could find that Officer Fonbuena violated Patterson's First Amendment right, and the law clearly established that right at the time of the arrest, the case should proceed to trial. Thus, Officer Fonbuena is not entitled to qualified immunity on the First Amendment claim. The court also cannot grant summary judgment on the merits due to a genuine issue of material fact.[1]

---

[1] Regarding Patterson's constitutional right to film the police, Officer Fonbuena argues that the right is subject to reasonable time, place, and manner restrictions. (ECF No. 32 at 20). Officer Fonbuena is correct that the government may impose a reasonable time, place, and manner restriction on expressive activity in a public forum. *Reed v. Lieurance*, 863 F.3d 1196, 1211 (9th Cir. 2017) (citing *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 858 (9th Cir. 2004).

James C. Mahan
U.S. District Judge

1

       b.  *Fourth Amendment*

2          Patterson argues that (1) Officer Fonbuena did not have probable cause to arrest him; and

3   (2) Officer Fonbuena used excessive force when unlawfully arresting him.   (ECF No. 15).

4   However, Officer Fonbuena disputes these allegations and maintains that even if he violated

5   Patterson's Fourth Amendment rights, he is entitled to qualified immunity on both claims.  (ECF

6   No. 32).  The court addresses each claim in turn.

7          i.  *Probable cause*

8          Officer Fonbuena contends that he is entitled to qualified immunity on the Fourth

9   Amendment claim because he had probable cause to arrest Patterson for refusing to obey his

10  order to "move on."  (ECF No. 32 at 28).  The court addresses each prong of qualified immunity

11  to determine whether Officer Fonbuena is entitled to judgment as a matter of law.

12          1.  *Constitutional violation*

13         Probable cause to arrest exists when, "under the totality of the circumstances known to

14  the arresting officers, a prudent person would have concluded that there was a fair probability

15  that [the suspect] had committed a crime."  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.

16  1986) (internal citations omitted).  If an officer makes an arrest without probable cause, the

17  officer may nonetheless be entitled to qualified immunity if he reasonably believed there to have

18  been probable cause.  *See Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009).

19         "Probable cause is generally a question for the jury," and the court can decide it as a

20  matter of law only if "no reasonable jury could determine that there was a lack of probable

21  cause."  *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990) (citing *McKenzie v. Lamb*, 738 F.2d

22  1005, 1007 (9th Cir. 1984)).  It is, moreover, a wholly objective standard—the arresting officer's

23  subjective intent or motivation is irrelevant.  *See e.g., Wren v. United States*, 517 U.S. 806, 813

24  (1996).

25

___

26  However, time, place, and manner restrictions apply to policies that police departments
    implement, not individual orders that officers give without a policy in place.  *See e.g., Turner v.*
27  *Lietenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017); *Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir.
    2011).  Here, there is no evidence in the record of a policy that Officer Fonbuena was enforcing
28  in his alleged attempt to restrict Patterson's First Amendment activity.  *See* (ECF Nos. 32, 36,
    40).  Thus, since both parties discuss the time, place, and manner restriction in generalities
    without ever identifying a policy, the court does not address this issue.

**James C. Mahan**
**U.S. District Judge**

1    Officer Fonbuena arrested and charged Patterson for pedestrian interference and

2    obstructing a police officer.  (ECF No. 32 at 15–16).   Officer Fonbuena argues that he had

3    probable cause to arrest Patterson when he refused to "move on."  *Id.* at 26–29.  However, the

4    court finds this argument unavailing because there is a genuine dispute as to whether Patterson

5    was obstructing police activity when he was recording the officers from fifteen feet away.  (ECF

6    No. 34 at Exs. D, E, H, K).  Indeed, a reasonable jury could find that Patterson's acts would not

7    give a reasonable officer probable cause to arrest him.  *See generally Whren*, 517 U.S. 806.

8    Therefore, the court finds that an issue of material fact exists as to whether Officer Fonbuena

9    violated Patterson's constitutional right to be free from unlawful arrest.

10            *2.   Clearly established right*

11    Having decided that there is a triable issue as to whether Officer Fonbuena had probable

12    cause to arrest Patterson, the court must next determine whether Office Fonbuena is nonetheless

13    entitled to summary judgment because no clearly established right exists.  *See Saucier*, 533 U.S.

14    at 201.

15    It is clearly established that a law enforcement officer cannot arrest an individual without

16    probable cause.  *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) ("It is well

17    established that an arrest without probable cause violates the Fourth Amendment") (internal

18    quotations omitted).  This right applies to all offenses, including Patterson's alleged violations of

19    NRS 197.190 and Las Vegas Municipal Code § 10.47.020.  *See generally Rosenbaum*, 663 F.3d

20    at 1076; (ECF Nos. 32, 36, 40).

21            *3.   Conclusion*

22    Because a reasonable jury could find that Officer Fonbuena violated Patterson's Fourth

23    Amendment right, and the law clearly established that right at the time of the arrest, the case

24    should proceed to trial.  Thus, Officer Fonbuena is not entitled to qualified immunity on this

25    Fourth Amendment claim.  Moreover, the court cannot grant summary judgment on the merits

26    because it finds that there is a genuine issue of material fact.

27    . . .

28    . . .

**James C. Mahan**
**U.S. District Judge**

- 9 -

1    *ii. Excessive force*

2        Officer Fonbuena maintains that he is entitled to qualified immunity for the excessive

3    force claim.  (ECF No. 32 at 29).  The court disagrees.

4            *1. Constitutional violation*

5        Turning to the first prong of qualified immunity, at summary judgment Officer Fonbuena

6    must show that no reasonable trier of fact could find that his use of force violated Patterson's

7    Fourth Amendment rights.  *See Saucier*, 533 U.S. at 201.

8        Courts analyze excessive force claims under the *Graham* framework.  *Id*.  Thus, the court

9    considers (1) how severe the crime at issue is; (2) whether the suspect posed an immediate threat

10   to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest or

11   attempting to evade arrest by flight.  *Id*. at 396; *see also Bryan v. MacPherson*, 630 F.3d 805,

12   826 (9th Cir. 2010).  These factors are not exclusive and are "simply a means by which to

13   determine objectively 'the amount of force that is necessary in a particular situation.'"  *Deorle v.*

14   *Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001).

15       In other words, the court examines the totality of the circumstances and considers

16   "whatever specific factors may be appropriate in a particular case, whether or not listed in

17   *Graham*."  *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994).  The totality of the

18   circumstances here suggests that there is no justification for Officer Fonbuena's use of force

19   against Patterson.

20       As to the first factor, Officer Fonbuena took Patterson to the ground where he and three

21   other officers placed Patterson in handcuffs for recording the ensuing arrest.  (ECF No. 32 at 14,

22   36 at 20).  Patterson did not obstruct or threaten the officers or anyone else, nor did he interfere

23   with the officers' arrest or investigation.  (ECF No. 36 at 20).  Moreover, Patterson was not

24   actively attempting to flee, and it is disputed whether Patterson was actively resisting arrest.  *Id*.

25   Therefore, a reasonable jury could find that Patterson committed no crime and thus any force

26   Officer Fonbuena used against Patterson would be excessive.

27       Even assuming that Patterson committed a crime, obstructing a police officer is a

28   misdemeanor.  *Mitchell v. City of Henderson, Nevada*, No. 2:13-cv-01154-APG-CWH, 2017 WL

**James C. Mahan**
**U.S. District Judge**

1   2841327 at *9 (D. Nev. July 3, 2017); Nev. Rev. Stat. 197.190.  A misdemeanor is not a severe

2   crime and thus this factor weighs in favor of a constitutional violation.

3          The "most important" factor is whether the suspect posed an "immediate threat to the

4   safety of the officers or others."  *City of Hemet*, 394 F.3d at 702 (citation omitted).  "A simple

5   statement by an officer that he fears for his safety or the safety of others is not enough; there

6   must be objective factors to justify such a concern."  *Deorle*, 272 F.3d at 1281.  Without pointing

7   to specific evidence in the record, Officer Fonbuena argues that Patterson was too close to the

8   other officers and refused to obey Officer Fonbuena's order to "move on."  (ECF No. 32 at 11,

9   13).  However, the court finds that there is a genuine dispute as to whether Patterson posed an

10  immediate threat, if any, to the safety of the officers or patrons.  *See* (ECF Nos. 32, 34 at Exs. D,

11  E, H, K, 36, 40).  Thus, the court cannot determine whether this factor weighs against a

12  constitutional violation.

13         Under the third factor, there is no evidence that Patterson attempted to flee.  (ECF Nos.

14  32, 34 at Exs. D, E, H, K, 36, 40).  However, it is unclear whether Patterson was actively

15  resisting arrest.  *Id*.  After repeatedly ordering Patterson to "move on" and Patterson refusing to

16  do so, Officer Fonbuena grabbed Patterson's arm, forcing Patterson off the sidewalk.  (ECF No.

17  34 at Exs. H, K).  Patterson reacted by pulling back, which resulted in Officer Fonbuena putting

18  his arm around Patterson's neck and shoulder, tossing him to the ground.  *Id*.  Officer Fonbuena

19  instantly got on top of Patterson, while three other officers rushed over to place Patterson in

20  handcuffs.  *Id*.  The dispute lies in whether Officer Fonbuena's action of grabbing Patterson's

21  arm was an attempt to arrest him.  *See generally* (ECF Nos. 32, 34 at Exs. E, H, K, 36, 40).

22         The Ninth Circuit has stated that most definitions of "arrest" require restraint, seizure, or

23  detention.  *United States v. Leal-Felix*, 625 F.3d 1148, 1160 (9th Cir. 2010).  While it is certain

24  that Officer Fonbuena arrested Patterson, the court cannot determine at what point Officer

25  Fonbuena's conduct constituted an arrest.  *See generally* (ECF No. 34 at Exs. H, K).  A

26  reasonable jury could either find that Officer Fonbuena grabbed Patterson's arm as an attempt to

27  stop Patterson from recording or as an attempt to arrest him.  Whichever the case may be, this

28  issue is one that a finder-of-fact should determine.

**James C. Mahan**
**U.S. District Judge**

1        In sum, triable issues of fact exist as to the second and third factors.  Thus, it is up to a

2    reasonable jury to decide whether Officer Fonbuena violated Patterson's Fourth Amendment

3    rights by using unconstitutionally excessive force.

4            *2. Clearly established right*

5        As for the "clearly established" prong of the qualified immunity analysis, it is well-

6    established that a law enforcement officer must use force that is proportionate to the level of

7    threat that a suspect creates.  *Jones v. Las Vegas Metro. Police Dep't.*, 873 F.3d 1123, 1131–32

8    (9th Cir. 2017).

9        Long before 2016, *Graham*, *Blackenhorn*, and *Young* made clear to a reasonable officer

10   that using substantial force against a suspect who did not commit a serious crime, did not pose a

11   threat, and did not resist arrest or attempt to flee is objectively unreasonable under the Fourth

12   Amendment.  *See Graham*, 490 U.S. at 393; *Blackenhorn v. City of Orange*, 485 F.3d 463 (9th

13   Cir. 2007); *Young v. County of Los Angeles*, 655 F.3d 1156, 1167–68 (9th Cir. 2011) (holding

14   that "it is rarely necessary, if ever, for a police officer to employ substantial force without

15   warning against an individual who is suspected only of minor offenses, is not resisting arrest,

16   and, most important, does not pose any apparent threat to officer[s] or public safety.").

17       As the court previously noted, obstructing a police officer is a misdemeanor.  *Mitchell*,

18   2017 WL 2841327 at *9; Nev. Rev. Stat. 197.190.  A reasonable officer would have known that

19   the Fourth Amendment does not allow an officer to violently place into custody a suspect who is

20   obstructing police activity while posing no threat to anyone's safety.  *See Robinson v. Solano*

21   *County*, 278 F.3d 1007, 1014 (9th Cir. 2002); *Young*, 655 F.3d at 1168; *Mitchel*, 2017 WL

22   2841327 at *9.

23           *3. Conclusion*

24       The court concludes that a reasonable jury could find that Officer Fonbuena violated

25   Patterson's Fourth Amendment right, and the law clearly established that right at the time of the

26   arrest.  Thus, the case should proceed to trial.

27   . . .

28   . . .

James C. Mahan
U.S. District Judge

*c.  Fifth and Fourteenth Amendment*

Patterson alleges that Officer Fonbuena denied Patterson his right to be free from any deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments. (ECF Nos. 15 at 6, 32 at 32).  Officer Fonbuena avers that this claim is not legally cognizable and thus the court must dismiss it.  (ECF No. 32 at 32).  The court disagrees.

"The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government—not to those of state or local governments."  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)).  However, Patterson alleges that Officer Fonbuena violated his due process rights through the Fifth and Fourteenth Amendments.  (ECF No. 15 at 6).  The Supreme Court has held that the Fifth Amendment applies to the states through incorporation of the Fourteenth Amendment.  *See Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *see also Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 1253 n. 1 (10th Cir. 2017) (citing *Hogan*, 378 U.S. at 6).  Thus, Patterson's due process claim is legally cognizable and applies to state actors, such as Officer Fonbuena.  *See id*.  The court therefore does not dismiss this claim.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Officer Fonbuena's motion for summary judgment (ECF No. 32) be, and the same hereby is, DENIED, consistent with the foregoing.

DATED August 2, 2019.

_____

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 13 -